IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KURT PAUL LUND,  CV 06-207-MA

        Petitioner,  OPINION AND ORDER

    v.

STATE OF OREGON; MARY CLAIRE
BUCKLEY, EXECUTIVE DIRECTOR OF THE
PSYCHIATRIC SECURITY REVIEW BOARD;
JACKSON COUNTY; GORDON NORMAN,
DIRECTOR OF THE HAZEL CENTER, A
JACKSON COUNTY MENTAL HEALTH
FACILITY,

        Respondents.

    TONIA L. MORO
    Assistant Federal Public Defender
    15 Newton Street
    Medford, OR  97501

        Attorney for Petitioner

    HARDY MEYERS
    Attorney General
    LESTER R. HUNTSINGER
    Senior Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, OR  97301-4096

        Attorneys for Respondent

MARSH, Judge:

1 - OPINION AND ORDER

Petitioner, an inmate in the custody of the Psychiatric Security Review Board, a Jackson County Mental Health Facility, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Petitioner's Second Amended Petition for Writ of Habeas Corpus (#12) is DENIED.

## BACKGROUND

In October 1998 Lund was civilly committed to the Oregon Mental Health and Developmental Disability Services Division after an indictment issued on October 1, 1998 charging Lund with felon[1] in possession of a firearm and unlawful possession of a short-barrel shotgun in Umatilla County. *See* Resp. Ex. 102 at 2. Lund, who is a paranoid schizophrenic, was found to present a substantial danger to others, necessitating civil commitment prior to the resolution of these criminal charges.

Two days before pleading guilty but insane to both of these charges, Lund was conditionally released from the Oregon State Hospital, beginning his odyssey with the Oregon mental health system of involuntary commitment, conditional release, and re-commitment. When he pleaded guilty but insane to both Counts alleged in the indictment on March 6, 2000, the Circuit Court of

---

[1] On June 29, 1994 Lund was convicted in Wallowa County Circuit Court in the State of Oregon, of Felony Driving While Suspended.

2 - OPINION AND ORDER

Umatilla County sentenced him to a 10-year[2] period of supervision by the Psychiatric Security Review Board (PSRB), but agreed that at the time of sentencing Lund appeared to "be adequately controlled with supervision and treatment" on conditional release.  *See* ORS 161.327(2)(b); Resp. Ex. 134 (Transcript); Resp. Ex. 101 (Judgment of Conviction).

In June 2001 Lund was apprehended for driving under the influence (DUI) and possession of methamphetamine, although the record does not contain a police report of this incident.  On April 4, 2002 the PSRB entered on Order revoking Lund's conditional release pursuant to ORS 161.336(5), which provides for revocation when the mental health of the person on conditional release changes, or when that person violates the terms of his conditional release.  Resp. Ex. 104.  At a hearing April 29, 2002, Lund's representative sought his discharge from the Oregon State Hospital.  However, on May 13, 2002, the PSRB entered a "Commit Order" which contained the findings required

---

[2] Although the length of Lund's sentence is a matter disputed in this petition, since I do not reach the merits of this dispute, I state the sentence I find most accurately reflects the preponderance of the evidence contained in the transcript of the March 6, 2000 plea and sentencing hearing (Resp. Ex. 134) together with the plea petition (Resp. Ex. 103)(stating that the "maximum possible sentence is 10 + 5 years imprisonment") and the Judgment of Conviction and Sentence (Resp. Ex. 101)(stating that PSRB's jurisdiction over Lund "shall be equal to the maximum sentence provided for the crimes alleged for which the defendant was found guilty but insane").

3 - OPINION AND ORDER

under ORS 161.346(1) to keep Lund hospitalized, such as that the State had proved by a preponderance of the evidence that Lund "could not be adequately controlled and treated in the community if he were conditionally released." Resp. Ex. 106 at 2.

In June 2002 Lund filed a Petition for Judicial Review in the Oregon Court of Appeals (Resp. Ex. 130, 131), which affirmed without opinion (Resp. Ex. 133). Lund did not seek further review of the PSRB's April 2002 decision.

On October 28, 2002 Lund was found guilty except for insanity of Possession of a Controlled Substance and Driving Under the Influence of Intoxicants in Umatilla County Case No. CFH010323 and sentenced to a five-year term of PSRB supervision to run concurrent to the 10-year term he was already serving for the firearms convictions. *See* Resp. Ex. 108.

Shortly after this new conviction, Lund evidently sought to be discharged from the Oregon State Hospital again. On December 23, 2002, the PSRB entered an "Amended Commit Order," denying Lund's application for discharge back to the community pursuant to ORS 161.346(1), upon finding that Lund remained a substantial danger to others. Resp. Ex. 107.

By the time the PSRB held another hearing in January 2003, Lund stipulated to their jurisdiction over him and his representative "informed the Board that it was his client's desire to remain in the hospital at [that] time. . ." Resp. Ex.

4 - OPINION AND ORDER

108. However, by June 2004 Lund's representative again sought his discharge. Following a hearing, the PSRB entered another "Commit Order" which stated that Lund failed to meet his burden under ORS 161.351 of showing by a preponderance of the evidence that he was fit for discharge at that time. Resp. Ex. 109.

On December 22, 2005 the PSRB conditionally released Lund to Hazel Center in Medford. Resp. Ex. 110. Respondent avers that Lund remains in the community at the time of this opinion.

PROCEDURAL HISTORY

An Amended Petition for Post-Conviction Relief was filed on Lund's behalf in Marion County Circuit Court on February 23, 2004, appealing Lund's March 6, 2000 firearms convictions. Resp. Ex. 114. Admitting untimeliness, the Petition explained that "the delay in filing...is intertwined with [Lund's] substantive claims for relief." Specifically, it alleged that Lund's attorney at the time he entered his guilty plea inaccurately informed him that he would be sentenced to a five-year term of PSRB supervision, not a 10-year term. *Id*. at 2.

Following post-conviction trial (Resp. Ex. 120) the petition was dismissed as untimely (Resp. Ex. 122). In a letter dated April 7, 2005, the Honorable Joseph C. Guimond, Circuit Court Judge, stated that he would have dismissed the petition on the merits even if it had not been untimely:

5 - OPINION AND ORDER

> [P]etitioner's claim of ineffective assistance of counsel
> fails because he freely and voluntarily signed a plea
> petition that expressly provided for a 10-year period of
> PSRB jurisdiction. Finally, his claims of trial court error
> are not properly brought in a post-conviction proceeding.

Resp. Ex. 121.

On July 8, 2005, Lund's counsel submitted "Section A" of a *Balfour* Brief (*State v. Balfour*, 311 Or. 434, 814 P 2d 1069 (1991)) on behalf of Lund, stating that he had advised Lund he was unable to identify any nonfrivolous issue for appeal, and he had given Lund the opportunity to draft and submit a "Section B Brief." Resp. Ex. 124. In Lund's "Section B" brief he asserted that he was innocent of the original firearms convictions, that he is not mentally ill, and that he has been forced to take medication. *Id*. The Oregon Court of Appeals affirmed the post-conviction trial court without opinion (Resp. Ex. 126-128), and the Oregon Supreme Court denied review (Resp. Ex. 126).

## GROUNDS FOR RELIEF

Petitioner raises six grounds for relief in his Second Amended Petition (#12). Ground one alleges a due process violation when the PSRP amended the commitment order without notice and a hearing, and upon insufficient evidence. Ground two alleges ineffective assistance of counsel for not advising Lund of the consequences of pleading guilty except for insanity.

6 - OPINION AND ORDER

Ground three alleges ineffective assistance of counsel for failing to object to the court's failure to comply with state and federal rules regarding plea consequences.  Ground four alleges a due process violation when the court failed to make findings regarding Lund's competency to enter a knowing, voluntary and intelligent plea.  Ground five alleges ineffective assistance for not objecting to the court's failure to make such competency findings.  Finally, Ground six alleges ineffective assistance for failing to investigate whether the state had sufficient evidence of Lund's constructive possession of a firearm.

STANDARDS

**I.   Timeliness**

Under 28 U.S.C. § 2244(d)(1)(A), a state prisoner seeking a federal habeas corpus remedy must file his federal petition within one year after his state conviction has become "final." However, under 28 U.S.C. § 2244(d)(2), the one-year period does not include the time during which a "properly filed" application for state collateral review is "pending" in state court.  *See Carey v. Saffold*, 536 U.S. 214, 219-221 (2002).  A petition is "pending" during intervals between the time a lower court denies the petition and the time petitioner files his notice of appeal in a higher court (usually 30 days), provided that the filing of

7 - OPINION AND ORDER

the notice of appeal is timely under state law. *Id*. at 214. A petition is not "pending" between the time a state judgment is final and a collateral challenge is filed, or between the time the collateral judgment is final and a federal petition is filed. *Nino v. Galaza*, 183 F.3d 1003, 1006-07 (9th Cir. 1999).

A federal petition for habeas relief is untimely if a state prisoner fails to file it within the one-year limitation period unless the petitioner can show that extraordinary circumstances beyond his control made it impossible to file a timely petition. *Gaston v. Palmer*, 387 F.3d 1004, 1009 (9th Cir. 2003); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001), *cert. denied*, 535 U.S. 1055 (2002); *Allen v. Lewis*, 255 F.3d 798, 799-800 (9th Cir. 2001), *reh'g en banc*, 295 F.3d 1046 (9th Cir. 2002). To meet the burden of this fact-specific inquiry, a habeas corpus petitioner must prove that the "extraordinary circumstance" was the but-for and proximate cause of his late filing. *Allen*, 255 F.3d at 800; *Gaston*, 387 F.3d at 1009.

**II. Exhaustion and Procedural Default**

    **A. Exhaustion**

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas

corpus relief.  *See* 28 U.S.C. § 2254(b)(1).  Since a federal court may only issue the writ freeing a state prisoner where his imprisonment violates the Constitution, laws, or treaties of the United States, a prisoner whose conviction rests on state-law grounds that are adequate, and independent from any federal claim he may have, is not entitled to the writ.  28 U.S.C. § 2254(a); *Wainwright v. Stykes*, 433 U.C. 72, 87-88 (1977)(habeas corpus relief not available to a state prisoner who is in state custody on "adequate and independent" state law grounds).

   A state prisoner must fairly present his federal claims to the state courts, including the state's highest court, before a federal court can consider granting habeas corpus relief. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 911 (9th Cir. 2004); *O'Sullivan v. Boerekel*, 526 U.S. 838 (1999).  The exhaustion doctrine is intended "to protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings."  *Rose v. Lundy*, 455 U.S. 509, 518 (1982).  Thus, state courts must be afforded a meaningful opportunity to consider and correct any legal violations before federal courts intervene.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).

9 - OPINION AND ORDER

A fair presentation requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of law on which he relies, or a case analyzing the federal constitutional guarantee on which he relies, or to simply label his claim "federal." *Baldwin*, 541 U.S. at 32; *Gray v. Netherland,* 518 U.S. 152, 162-63 (1996). Failure to do so will result in a prisoner's claim being unexhausted, even if all the facts necessary to support the federal claim were available to the state courts, or somewhat similar claims were made. *Anderson v. Harless*, 459 U.S. 4, 6, (1982). The state appellate courts are "not required to comb the trial court's decision to discover" the federal issue(s). *Castillo v. McFadden*, 370 F.3d 882, 886 (9th Cir. 2004). Thus, if the prisoner has never given the state courts an opportunity to consider his federal claims, generally federal courts will not consider them either. 28 U.S.C. § 2254(c).

**B.   Procedural Default**

Even if a prisoner has given the state courts an opportunity to consider his federal claims, if a procedural rule barred the state courts from considering the merits of the claims when they were presented, generally federal courts will not consider them either, because the claims are now procedurally defaulted.

*Franklin v. Johnson*, 290 F. 3d 1223 (9th Cir.), *cert. denied*, 541 U.S. 1037 (2004); *Castille v. Peoples*, 489 U.S. 346, 351-52 (1989)(claim not fairly presented when raised for the first time on petition for review to state Supreme Court).

When a habeas petitioner fails to raise a federal claim in state court in a procedural context in which its merits will be considered, the claim is procedurally defaulted and federal habeas review is barred unless the petitioner can demonstrate "cause" and "actual prejudice," or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993).

To show "cause" a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Trial counsel's failure to recognize the factual or legal basis of the claim does not qualify as "cause." *Id*. at 486. Moreover, since the United States Constitution does not afford prisoners the right to appellate counsel (unless they have been sentenced to capital punishment), appellate counsel's failure to provide effective assistance does

11 - OPINION AND ORDER

not qualify as "cause" to excuse procedural default. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991).

To show "actual prejudice" a petitioner must show not simply that the procedural default created the possibility of prejudice, but an "actual and substantial disadvantage." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

Alternatively, a procedural default may be excused if the petitioner can show a "fundamental miscarriage of justice" occurred because he is actually innocent of the crimes for which he was convicted. *See Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 495-496 (1986)).

The actual innocence exception to procedural default is not a constitutional claim itself, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schulp v. Delo*, 513 U.S. 298, 315 (1995)(citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

In essence, a petitioner facing a procedural bar must satisfy a two-part test in order to pass through the "*Schlup* gateway." First, the petitioner must produce new, reliable evidence that was not presented at trial to supplement his

12 - OPINION AND ORDER

constitutional claim with a colorable showing of factual innocence. *Schlup*, 513 U.S. at 324. Such evidence may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Id*.

Second, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 327-28. In other words, a petitioner "need only present evidence of innocence strong enough 'that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.'" *Carriger v. Stewart*, 132 F.3d 463, 478 (9th Cir. 1997)(quoting *Schlup*, 513 U.S. at 316). In considering this new evidence, the court is not bound by the rules of admissibility. *Id*.

## DISCUSSION

Although Lund raised six grounds for relief in his Second Amended Petition for Writ of Habeas Corpus (#12), his memorandum in support of the petition (#44) only addresses one of his grounds for relief – ground six. Accordingly, in Respondent's Reply it asks the Court to deny the writ as to grounds one through five because these grounds were not traversed. *See* 28 U.S.C. § 2248 (stating "The allegations of a return to the writ

13 - OPINION AND ORDER

of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.").

In its Response to the Second Amended Petition for Writ of Habeas Corpus (#29) Respondent persuasively argued that the first and fourth grounds for relief should be dismissed as untimely, and that the remaining grounds should be rejected because they are now procedurally defaulted, if not also unexhausted. Upon a thorough review of the record I do not find any evidence that Respondent's allegations as to Lund's grounds one through five are not true. I therefore accept, without further discussion, Respondent's allegations as to these grounds pursuant to 28 U.S.C. § 2248. Accordingly, Lund is not entitled the writ of habeas corpus on the basis of grounds one through five.

Turning to ground six, in his Memorandum in Support of Habeas Corpus Petition (#44) Lund states that he is entitled to relief on this claim because counsel failed to investigate his "innocence of the crime of knowing possession of a sawed off shotgun [*sic*] and thereby failed to ensure that his plea of guilty-but-insane was knowing and intelligent." However, Lund does not address Respondent's contention that this claim is

14 - OPINION AND ORDER

procedurally defaulted because it was not presented to the Oregon court of Appeals in a procedural context in which the merits would be considered. In other words, even if the claim in Ground six can be found in a very liberal construction of Lund's "Section B" *Balfour* brief to the Oregon Court of Appeals, Respondent contends that since Lund did not raise it to the post-conviction relief (PCR) trial court it was not preserved on appeal, and it is therefore defaulted. I concur.

   In his Amended Petition for Post-Conviction Relief (Resp. Ex. 114) Lund not only failed to raise the claim in Ground Six, he stated that until he realized his term of supervision by the PSRB was 10 years he "was more or less satisfied with the outcome of his trial level proceedings." *Id*. at 2. This statement tends to undermine his contention that trial counsel should have investigated whether the state could prove he was guilty of the crime of possessing a short-barrel shotgun before advising him to plead guilty but insane. Moreover, the three claims he raised in his petition to the PCR trial court all relate to alleged failures on the part of trial counsel and the court in advising Lund about the maximum sentence he faced in pleading guilty but insane to the firearms charges. *Id*. at 3. Accordingly, I find Lund failed to fairly present ground six to the PCR trial court,

15 - OPINION AND ORDER

and therefore this claim is unexhausted, and since the time has passed to bring this claim, it is also procedurally defaulted.

Lund argues that any procedural default of ground six should be excused under the "miscarriage of justice" exception. According to Lund he is "actually innocent" of the crime of unlawfully possessing a short-barrel shotgun. He requests a hearing, at which "he would testify regarding the facts surrounding the alleged crimes and continue his efforts to find and subpoena Mrs.[Nancy] Wilkes." Petitioner's Memorandum in Support of Habeas Corpus Petition (#44) at 18.

Neither Lund's own testimony, nor the testimony of Nancy Wilkes, constitutes new evidence. Lund has had a full and fair opportunity to develop the factual basis of his claim that counsel failed to investigate whether the state could prove Lund possessed the shotgun. On February 3, 2005, Lund testified for over an hour in a deposition in preparation for his PCR trial. Lund conveyed his version of how the shotgun came to be in his car the night he was arrested, and specifically alleged that the gun belonged to a man named Marty Wilkes. Resp. Ex. 120 at 7-8. Lund stated the he and his girlfriend, and Marty and Nancy Wilkes, had driven to Hermiston in Lund's car to buy drugs, and that Marty and Nancy brought several bags of things allegedly to

sell or trade for drugs, and that Lund did not know the shotgun was among those things.

> Q: So you thought you were giving Marty and his wife a ride to Hermiston to sell two or three bags or some quantity of stuff and that some of the proceeds would be used to buy meth or crank and you'd all share in the meth?
>
> A: I have no idea. They didn't fill me in on what was going on. But that's - -
>
> Q: And you never asked?
>
> A: - - the only reason why we would go that far, is to go buy some drugs, because that was the only - - there was - - they didn't have that kind of stuff around Wallowa.
>
> Q: All right. So where is Marty Wilkes now?
>
> A: He's dead. He committed suicide like two months after that happened. And he was all pissed off at me for letting them search the car. I don't really know the whole story there. But his wife told me that he took a .22 rifle and shot himself in the head on their porch because she locked him out of the house because she  - - he wouldn't take the blame for the gun or something.
>
> Q: What's his wife's name?
>
> A: Nancy Wilkes.
>
> Q: How old is Nancy Wilkes?
>
> A: About my age.
>
> Q: And how old are you?
>
> A: Fourty-two.
>
> Q: Where does Nancy Wilkes live?

17 - OPINION AND ORDER

> A: I don't know. My girlfriend, or my ex-girlfriend said she lives in, is staying in LaGrande. And I don't know where, though.
>
> Q: But you don't know whether she's staying in LaGrande or not?
>
> A: I'm pretty sure she is.

Resp. Ex. 120 at 9-11. When asked how his trial attorney responded when told this story Lund stated that it "seemed like we had Nancy Wilkes subpoenaed. But she must have been under the influence of drugs or something, because she got arrested." Resp. Ex. 120 at 17-18.

Neither Lund's testimony "regarding the facts surrounding the alleged crimes," nor the testimony of an unsecured witness whose version of events has been known to Lund since shortly after his arrest constitutes "new" evidence. Moreover, this sort of testimony is not the type of "reliable" evidence contemplated in *Schlup*. 513 U.S. at 324 (listing as examples "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Accordingly, Lund is not entitled to a hearing to develop further his own testimony "regarding the facts surrounding the alleged crimes." *See* 28 U.S.C. § 2254(e)(2)(federal courts "shall not hold an evidentiary hearing on the claim" unless the claim is based on a new rule of constitutional law made

18 - OPINION AND ORDER

retroactive by the Supreme Court, or a factual predicate that could not have been discovered previously through the exercise of due diligence). Nor is Lund entitled to have this Court consider the merits of his ground six as he has not made a sufficient showing of actual innocence to excuse the procedural default of this claim.

## CONCLUSION

Based on the foregoing, Petitioner's Second Amended Petition for Writ of Habeas Corpus (#12) is DENIED.

IT IS SO ORDERED.

DATED this 23_ day of April, 2008.

                                                /s/ Malcolm F. Marsh
                                                Malcolm F. Marsh
                                                United States District Judge